FILED
CLERK, U.S. DISTRICT COURT
6/23/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: CD DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2022 Grand Jury

| UNITED STATES OF AMERICA, | CR 5:22-cr-00150-JGB |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Mail Fraud in Relation to Benefits Connected to Presidentially Declared Emergency; 18 U.S.C. § 1341: Mail Fraud in Relation to Benefits Connected to Presidentially Declared Emergency; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 982: Criminal Forfeiture] |
| ROBERT CAMPBELL, JR., aka "Jacques," REGJINAY TATE, aka "Reggie," SHELBI DUPREE, GREG HENDERSON, BRANDON GULLY, SIMONE GUERINGER, DILLON ROBERTS, and KEITH BURNS, | |
| Defendants. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

[ALL DEFENDANTS]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. The California Employment Development Department ("EDD") administered unemployment insurance ("UI") benefits for residents of California, including Pandemic Unemployment Assistance benefits to individuals who were unemployed because of the COVID-19 pandemic ("pandemic benefits").

2. On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act. As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020.

3. The CARES Act established a new program -- Pandemic Unemployment Assistance ("PUA") -- to provide UI benefits during the COVID-19 pandemic to people who did not qualify for regular UI benefits, including business owners, self-employed workers, independent contractors, and those with a limited work history, who were out of business or had significantly reduced their services as a direct result of the pandemic. UI benefits provided under the PUA program were sometimes referred to as PUA benefits.

4. Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

5. A UI claimant could usually collect 26 weeks of regular state UI benefits. The CARES Act provided for additional Pandemic Emergency Unemployment Compensation ("PEUC"), which provided up to 13 weeks of additional payments, for a total of 39 weeks of benefits.

PEUC was available to persons who were fully or partially unemployed at any time between from March 29, 2020 through December 26, 2020. Persons with a regular UI claim, a PUA claim or a PEUC extension filed between March 29, 2020 and July 25, 2020, also received Federal Pandemic Unemployment Compensation ("FPUC"), which provided an extra $600 per week.

6. On August 8, 2020, after FPUC expired, the President signed a Presidential Memorandum authorizing FEMA to use disaster relief funds pursuant to Section 408 of the Stafford Act to provide supplemental payments for lost wages to help ease the financial burden on individuals who were unemployed as a result of COVID-19. The "Lost Wages Assistance Program" ("LWAP") served as a temporary measure to provide an additional $300 per week via a total of $44 billion in FEMA funds. The period of assistance for LWAP was August 1, 2020, to December 27, 2020, or termination of the program, whichever was sooner.

7. To qualify for UI benefits, including pandemic benefits, a California resident had to submit to EDD an application for the benefits; provide EDD with personal identifying information ("PII"), including the applicant's name, date of birth, and Social Security Number; and certify to EDD under the penalties of perjury that the COVID-19 pandemic had directly and adversely affected the applicant's employment.

8. Persons applying for PUA benefits did not need to submit any supporting documents to EDD with their applications. Claimants reported their total income for the 2019 calendar year on the application. The stated income was used to calculate the benefits to be paid, which were at least $167 per week.

9. Individuals who were employed, retired, or incarcerated were not eligible for UI benefits, including pandemic benefits.

10. Individuals whose claims were not based on California employment or residence were not eligible for California UI benefits.

11. Applications for UI benefits, including pandemic benefits, could be submitted to EDD online. An individual who applied online for benefits would provide EDD with an email address ("account email address") in addition to the applicant's physical mailing address ("account mailing address").

12. After a person submitted an application for UI benefits, including pandemic benefits, EDD would transmit an email to the account email address confirming the submission of the application and, thereafter, would send correspondence related to the application and the UI benefits, including pandemic benefits, to the account email address.

13. Once approved for pandemic benefits, the recipient of the benefits would be required to periodically recertify under the penalties of perjury that, among other things, the recipient was unemployed due to the COVID-19 pandemic and therefore remained eligible to receive pandemic benefits.

14. Once EDD approved the application and granted pandemic benefits to the applicant, EDD would create a debit account ("EDD debit account") with Bank of America, NA ("Bank of America" or "BofA"). A debit card linked to the EDD debit account would then be mailed to the account mailing address.

15. EDD would deposit UI benefits, including pandemic benefits, to the EDD debit account. The debit card could then be used to withdraw the benefits from the EDD debit account using automated

teller machines ("ATMs"), including ATMs that Bank of America, Wells Fargo Bank, NA ("Wells Fargo"), and JPMorgan Chase Bank, NA ("Chase") operated.

B. <u>OBJECT OF THE CONSPIRACY</u>

16. Beginning no later than in or around March 2020 and continuing through at least in or around July 2021, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendants ROBERT CAMPBELL, JR., also known as ("aka") "Jacques," REGJINAY TATE, aka "Reggie," SHELBI DUPREE, GREG HENDERSON, BRANDON GULLY, SIMONE GUERINGER, DILLON ROBERTS, and KEITH BURNS conspired with one another, and with others known and unknown to the Grand Jury, to commit mail fraud in relation to and involving benefits authorized, transported, transmitted, transferred, disbursed, and paid in connection with a presidentially declared major disaster and emergency, namely, the COVID-19 pandemic, in violation of Title 18, United States Code, Section 1341.

C. <u>MANNER AND MEANS OF THE CONSPIRACY</u>

17. The object of the conspiracy was carried out, and was to be carried out, in substance, as follows:

    a. Defendants CAMPBELL, TATE, DUPREE, HENDERSON, GULLY, GUERINGER, and ROBERTS, and others known and unknown to the Grand Jury, would acquire the PII, such as the names, dates of birth, and Social Security Numbers, of individuals ineligible for UI benefits and pandemic benefits based on their residency, employment history, and incarceration status.

    b. In some instances, to solicit the PII of potential EDD claimants and to gain their trust, defendant TATE would brandish a false credential purporting to establish her employment with EDD and

falsely claim to be offering assistance to claimants in that capacity in filing PUA claims.

  c. Defendants CAMPBELL, TATE, DUPREE, HENDERSON, GULLY, GUERINGER, and ROBERTS, and others known and unknown to the Grand Jury, would exchange other individuals' PII over electronic messaging services, including WhatsApp.

  d. To induce BofA to issue debit cards on behalf of EDD and cause them to be mailed, defendant CAMPBELL, and others known and unknown to the Grand Jury, would make fraudulent online applications to EDD for UI benefits, including pandemic benefits funded by LWAP, in the names of those individuals (the "fraudulent EDD applications"). The fraudulent EDD applications would generally:

    i. falsely state claimants' prior annual income by asserting an annual income of $42,000 for all claimants regardless of their actual income;

    ii. falsely state that the named claimants were "Unemployed Self-employed Individual[s]" whose employment was negatively affected because "Salons and barbershops closed due to covid19," when, in truth, the claimants had not worked in salons or barbershops, nor had their employment status been altered by the closure of salons or barbershops; and

    iii. falsely state claimants' mailing addresses by replacing claimants' true mailing addresses with mailing addresses associated with locations chosen and controlled by defendants CAMPBELL, TATE, DUPREE, GULLY, GUERINGER, and BURNS.

  e. Defendants CAMPBELL, TATE, ROBERTS, and BURNS would use the BofA debit cards issued in the names of other claimants in

6

response to the fraudulent EDD applications to withdraw funds at ATMs.

   f. Defendants ROBERTS and BURNS, along with others known and unknown to the Grand Jury, arranged for PUA benefits to be disbursed to claimants living outside California, including in Texas, by causing some of the fraudulent EDD applications to falsely state California addresses for such claimants and by causing BofA PUA ATM cards to be mailed to a Texas address controlled by defendant BURNS.

  18. Through their conspiracy, defendants CAMPBELL, TATE, DUPREE, HENDERSON, GULLY, GUERINGER, ROBERTS, and BURNS, and their co-conspirators, caused approximately 174 fraudulent applications for PUA benefits to be filed with EDD, resulting in at least approximately 125 fraudulent PUA claims being paid to approximately 116 unique claimants, causing losses of approximately $2,091,436.

D. <u>OVERT ACTS</u>

  19. In furtherance of the conspiracy, and to accomplish its object, defendants CAMPBELL, TATE, DUPREE, HENDERSON, GULLY, GUERINGER, ROBERTS, and BURNS, and others known and unknown to the Grand Jury, committed and willfully caused others to commit, on or about the dates set forth below, the following overt acts, among others, within the Central District of California, and elsewhere:

  <u>Overt Act No. 1</u>: On July 2, 2020, defendant CAMPBELL, from his home in Corona, California, caused an online UI application to be filed with EDD in the name of victim-claimant A.W. that: (1) falsely listed CAMPBELL's mailing address in the place of victim A.W.'s out-of-state mailing address; (2) falsely stated that victim A.W. had an annual income of $42,000; and (3) falsely stated that victim A.W. was unemployed because "salons and barbershops closed due to covid19."

<u>Overt Act No. 2</u>:   On July 2, 2020, in an electronic communication, defendant TATE sent defendant CAMPBELL a message containing victim-claimant D.L.'s Social Security Number and birthdate.

<u>Overt Act No. 3</u>:   On July 2, 2020, defendant CAMPBELL, from his home in Corona, California, caused an online UI application to be filed with EDD in the name of victim-claimant D.L. that: (1) listed a false mailing address for victim-claimant D.L.; (2) falsely stated that victim-claimant D.L. had an annual income of $42,000; and (3) falsely stated that victim-claimant D.L. was unemployed because "salons and barbershops closed due to covid19."

<u>Overt Act No. 4</u>:   On July 15, 2020, in an electronic communication, defendant HENDERSON sent defendant CAMPBELL a message containing the PII (including the name, Social Security Number, and birthdate) of L.J.H.

<u>Overt Act No. 5</u>:   On August 7, 2020, in an electronic communication, defendant HENDERSON sent defendant CAMPBELL a message containing the PII (including the name, Social Security Number, and birthdate) of R.S.F.

<u>Overt Act No. 6</u>:   On August 13, 2020, in an electronic communication, defendant ROBERTS sent defendant CAMPBELL a message containing the PII (including the name and Social Security Number) of Oregon resident M.R.R.

<u>Overt Act No. 7</u>:   On August 14, 2020, defendant CAMPBELL, from his home in Corona, California, caused an online UI application to be filed with EDD in the name of Oregon resident M.R.R. that: (1) falsely stated M.R.R.'s mailing address; (2) falsely stated that M.R.R. had an annual income of $42,000; and (3) falsely stated that

M.R.R. was unemployed because "salons and barbershops closed due to covid19."

Overt Act No. 8:   On August 20, 2020, in an electronic communication, defendant ROBERTS sent defendant CAMPBELL a message containing the PII (including the name, birthdate, and Social Security Number) of claimant R.J., a Texas resident.

Overt Act No. 9:   On August 20, 2020, in an electronic communication, defendant DUPREE sent defendant CAMPBELL a message containing the PII (including the Social Security Number and birthdate) of J.H., a Texas resident.

Overt Act No. 10:   On August 21, 2020, in an electronic communication, defendant CAMPBELL sent defendant DUPREE a message containing an online EDD "confirmation" that the claim made on behalf of J.H. had been "filed."

Overt Act No. 11:   On August 23, 2020, in an electronic communication, defendant CAMPBELL sent defendant ROBERTS a message confirming that defendant CAMPBELL had filed an online UI application with EDD in the name of defendant BURNS, which application: (1) fraudulently replaced defendant BURNS's true Texas mailing address with defendant GULLY's California mailing address; (2) falsely stated that defendant BURNS had an annual income of $42,000 derived from his "usual occupation" as a "barber"; and (3) falsely stated that defendant BURNS but was unemployed because "salons and barbershops closed due to covid19."

Overt Act No. 12:   On August 31, 2020, in an electronic communication, defendant CAMPBELL sent defendant GUERINGER a message confirming that CAMPBELL had filed an online UI application with EDD in the name of claimant K.B., which application: (1) stated a false

mailing address for K.B.; (2) falsely stated that K.B. had an annual income of $42,000; and (3) falsely stated that K.B. was unemployed because "salons and barbershops closed due to covid19."

<u>Overt Act No. 13</u>:   On September 2, 2020, in a series of electronic communications, defendants CAMPBELL and GUERINGER discussed passwords for the online EDD profiles of claimants K.B. and D.W., as well as the false listing of a coconspirator's mailing address on both claimants' applications.

<u>Overt Act No. 14</u>:   On September 3, 2020, in a series of electronic communications, defendant GULLY sent defendant CAMPBELL a message containing the PII (including the name, Social Security Number, and birthdate) of victim M.S.S. for the purpose of causing a fraudulent EDD claim to be filed in M.S.S.'s name and remarked, "Aye my BM ["baby mama"] is ah savage she got ah homeless man info," to which defendant CAMPBELL responded, "Hell yeah!!!"

<u>Overt Act No. 15</u>:   On September 4, 2020, in an electronic communication, defendant CAMPBELL sent defendant GULLY the last four digits of defendant BURNS's Social Security Number in response to a request from defendant GULLY.

<u>Overt Act No. 16</u>:   On October 16, 2020, defendant BURNS used a BofA EDD benefits ATM card in the name of incarcerated Texas claimant A.I. to withdraw $1,000 in cash at a BofA ATM in Humble, Texas.

<u>Overt Act No. 17</u>:   On January 11, 2021, in a series of electronic communications, defendant DUPREE notified defendant CAMPBELL that defendant DUPREE was required, in connection with a fraudulent EDD application, to "sign in to something and . . . verifys [sic] your identity," to which defendant CAMPBELL responded, "My homeboy said try Colorado cause they not doing that verify shit

and it's a sanction [sic] state so you can have the card delivered anywhere."

Overt Act No. 18:   On January 11, 2021, in a series of electronic communications, defendant DUPREE informed defendant CAMPBELL that the individuals whose PII defendant DUPREE was using to submit UI claims were unaware of defendant DUPREE's use of their PII, to which defendant CAMPBELL responded, "Lol you're a fucking crook." Defendant DUPREE responded, "Lol haha."

## COUNTS TWO THROUGH SEVEN

[18 U.S.C. §§ 1341, 2(a)]

[ALL DEFENDANTS]

20. The Grand Jury realleges paragraphs 1 through 15 and 17 and 18 of this Indictment here.

A. THE SCHEME TO DEFRAUD

21. Beginning no later than in or around March 2020 and continuing through at least in or around July 2021, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendants ROBERT CAMPBELL, JR., also known as ("aka") "Jacques," REGJINAY TATE, aka "Reggie," SHELBI DUPREE, GREG HENDERSON, BRANDON GULLY, SIMONE GUERINGER, DILLON ROBERTS, and KEITH BURNS, together with others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud EDD and the United States Treasury as to material matters, and to obtain money and property from EDD and the United States Treasury, namely, approximately $2,113,966 in UI benefits, including PUA benefits and benefits funded by the LWAP, by means of material false and fraudulent pretenses, representations, and promises in relation to and involving a benefit authorized, transported, transmitted, transferred, disbursed, and paid in connection with a presidentially declared major disaster and emergency.

22. The fraudulent scheme operated, in substance, as described in paragraphs 17 and 18 of this Indictment.

B.  USE OF THE MAILS

23.  On or about the following dates, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, the below-named defendants, together with others known and unknown to the Grand Jury, each aiding and abetting the other, for the purpose of executing the scheme to defraud described above, knowingly caused the following items to be delivered by the United States Postal Service and private and commercial interstate carrier, according to the directions thereon:

| COUNT | DEFENDANTS | DATE | ITEM MAILED |
|---|---|---|---|
| TWO | CAMPBELL, TATE, and HENDERSON | 7/6/2020 | EDD debit card ending in 9219 in the name of victim-claimant A.W. mailed by FIS Corporation to 1068 Casandra Ln, Corona, CA 92879 |
| THREE | CAMPBELL, TATE, and HENDERSON | 7/16/2020 | EDD debit card ending in 3274 in the name of victim-claimant D.L. mailed by FIS Corporation to 420 N McKinley St # 111-291, Corona, CA 92879 |
| FOUR | CAMPBELL, TATE, HENDERSON, GULLY, GUERINGER, and ROBERTS | 8/17/2020 | EDD debit card ending in 1467 in the name of Oregon resident and claimant M.R.R. mailed by FIS Corporation to 709 N 7th St, Colton CA, 92324 |
| FIVE | CAMPBELL, TATE DUPREE, HENDERSON, GULLY, GUERINGER, ROBERTS, and BURNS | 8/24/2020 | EDD debit card ending in 9998 in the name of claimant R.J. mailed by FIS Corporation to 767 La Loma Ln, Corona, CA 92879 |

| COUNT | DEFENDANTS | DATE | ITEM MAILED |
|-------|------------|------|-------------|
| SIX | CAMPBELL, TATE DUPREE, HENDERSON, GULLY, GUERINGER, ROBERTS, and BURNS | 8/28/2020 | EDD debit card ending in 4345 in the name of defendant BURNS mailed by FIS Corporation to 709 N 7th St, Colton, CA 92324 |
| SEVEN | CAMPBELL, TATE DUPREE, HENDERSON, GULLY, GUERINGER, ROBERTS, and BURNS | 9/6/2020 | EDD debit card ending in 6905 in the name of Texas resident and claimant J.H. mailed by FIS Corporation to 1261 W Rosecrans Ave Apt 235, Gardena CA, 90247 |

COUNTS EIGHT THROUGH FOURTEEN

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

[ALL DEFENDANTS]

24. The Grand Jury realleges paragraphs 1 through 15 and 17 and 18 of this Indictment here.

25. On or about the following dates, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, the below-named defendants, together with others known and unknown to the Grand Jury, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, means of identification that the below-named defendants knew belonged to other persons, namely, the names and Social Security Numbers of the individuals identified below, during and in relation to the offense of Conspiracy to Commit Mail Fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

| COUNT | DEFENDANT(S) | DATE(S) | MEANS OF IDENTIFICATION |
|---|---|---|---|
| EIGHT | CAMPBELL and TATE | 7/2/2020 | Name and Social Security Number of victim-claimant D.L. |
| NINE | ROBERTS | 8/13/2020-8/14/2020 | Name and Social Security Number of claimant M.R.R. |
| TEN | DUPREE | 8/20/2020-8/21/2020 | Name and Social Security Number of claimant J.H. |
| ELEVEN | HENDERSON | 7/15/2020 | Name and Social Security Number of claimant L.J.H. |
| TWELVE | GULLY | 9/3/2020 | Name and Social Security Number of M.S.S. |

| COUNT | DEFENDANT(S) | DATE(S) | MEANS OF IDENTIFICATION |
|---|---|---|---|
| THIRTEEN | GUERINGER | 8/29/2020-8/31/2020 | Name and Social Security Number of claimants K.B. and D.W. |
| FOURTEEN | BURNS | 10/16/2020 | Name of claimant A.I. on EDD debit Card. |

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1.  Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Fourteen of this Indictment.

2.  Any defendant so convicted shall forfeit to the United States of America the following:

    (a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

    (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//
//
//

17

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

KRISTEN A. WILLIAMS
Assistant United States Attorney
Acting Chief, Major Frauds Section

ALEXANDER B. SCHWAB
Assistant United States Attorney
Deputy Chief, Major Frauds Section

ADAM P. SCHLEIFER
Assistant United States Attorney
Major Frauds Section